**UNITED STATES of America, Appellee,**

v.

**Merlyn A. YAGOW, Appellant.**

**No. 91–1237.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 26, 1991.

Decided Jan. 8, 1992.

William Kirschner, Fargo, N.D., argued, for appellant.

Norman George Anderson, Fargo, N.D., argued, for appellee, Lynn C. Jordheim, Fargo, N.D., on the brief.

Before JOHN R. GIBSON, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Merlyn Yagow appeals his conviction on eleven counts of bankruptcy fraud in violation of 18 U.S.C. § 152 (1988). A jury found Yagow guilty on six counts of concealing assets of the bankruptcy estate, three counts of lying under oath about the location of the assets, and two counts of making false statements under penalties of perjury. On appeal, Yagow argues that: 1) his conviction must be reversed because he did not make a knowing and intelligent waiver of his right to counsel when he chose to represent himself during the first day of trial; and 2) the district court erred by failing to dismiss the two false statement counts because the statements were neither "material" nor "in relation to" a bankruptcy case as required by 18 U.S.C.

§ 152. We affirm the judgment of the district court.

Yagow, a North Dakota farmer, obtained loans from the Production Credit Association by granting the lender a security interest in his farm machinery and equipment. He defaulted on his loan payments, and Production Credit moved to repossess the machinery. After the county sheriff started the repossession pursuant to a court order, Yagow filed for bankruptcy under chapter 11. Authorities halted the repossession, and the bankruptcy court ordered the equipment returned to Yagow pending the outcome of the proceedings, with the direction that Yagow not dispose of the machinery without court approval.

Yagow failed to file a reorganization plan in the 120–day exclusive period allotted to the debtor. Several months later, Production Credit and other creditors filed a liquidation plan that the bankruptcy court approved over Yagow's objections in April 1986. The court appointed Edward Melroe liquidating trustee and granted him the authority to take possession of all of Yagow's nonexempt property and sell it.

At a May 1986 hearing, the bankruptcy court made clear to Yagow that he must abide by the court's orders concerning the liquidation even though he continued to express his disagreement with them. Three months later, following Yagow's continued refusal to cooperate with the trustee, the district court warned Yagow that the bankruptcy court's order was in full force and effect and gave him two weeks to turn over his property to the trustee. Yagow failed to do so, and the court jailed him for contempt. The court released him two months later even though Yagow still had not complied with the court's order.

Production Credit conducted a Rule 2004 examination of Yagow in June 1987. Yagow stated under oath that he did not know the location of any of the machinery. In August 1988, Production Credit interrogated Yagow before Magistrate Karen Klein. Yagow once again stated under oath that he did not know where any of the machinery was located. He also denied knowing whether any of the machinery was located on other farms near his property. At the end of the interrogation, the magistrate reminded Yagow that his testimony was given under penalty of perjury and that knowing concealment of property from the bankruptcy court is a criminal offense. Following these warnings, Yagow again stated that he did not know where the property was located and had done nothing to dispose of it.

After being indicted in September 1989 on eleven counts of bankruptcy fraud, Yagow disappeared. About ten months later, the FBI arrested him near Valley City, North Dakota. At his subsequent arraignment, Yagow refused to cooperate and had to be brought into court lying on a cart. He turned his back on the magistrate when she advised him of his rights and he refused to enter a plea. At a detention hearing two days later, Yagow said he "want[ed] to be in charge of everything that proceeds." He referred to his appointed attorney as "co-counsel."

Before trial, Yagow filed two documents, one a "notice" to the United States Attorney's Office and one a motion to the district court. Both documents alleged that the court was without jurisdiction to try him.

Four days before the trial, Yagow filed a motion to dismiss his appointed attorney, William Kirschner. On the morning of trial, the court held a hearing on the motion, at which Yagow stated that his attorney was "not very compatible" with him. The court told Yagow: "[Y]ou, of course, have an absolute right as a defendant to represent yourself, and I am, of course, going to allow you to do so...." The court then ordered Kirschner to remain in the courtroom as a "resource" for Yagow but not to speak or do anything unless requested by Yagow. After the court explained the arrangement to Yagow, he reiterated that he wished to represent himself. The court did not engage in any further inquiry with Yagow regarding his decision.

On the first day of trial, Yagow refused to participate in jury selection or to make an opening statement. He did not cross-examine either of the two government wit-

nesses, and lodged no objections other than to repeatedly assert that the court lacked jurisdiction because there was no legitimate "moving party" and because the criminal charges against him were not "derived from" a preceding civil matter. The court acknowledged these objections and stated that they would be preserved for the purpose of appeal.

The first of the two government witnesses, an attorney for Production Credit, described the items in which Production Credit held a security interest and the lender's inability to locate the collateral. Melroe, the liquidating trustee, described his unsuccessful trips through neighboring areas to locate the missing collateral, recounted Yagow's warnings not to enter his property, and described a trench dug around Yagow's yard to thwart removal of any collateral.

Yagow made no response when the court asked him if he wanted to cross-examine Melroe. Earlier, when the court had asked the same question regarding the Production Credit witness, Yagow replied: "Oh, I'd love to, but I think I'll reserve it for the civil court."

On the second day of trial, before the jury returned, Yagow told that judge that he had made a "change" and now wished to retain Kirschner as his "co-counsel." Kirschner functioned as Yagow's attorney for the remaining two days of the three-day trial. Kirschner cross-examined the remaining government witnesses, including some neighbors who testified that they had concealed or stored Yagow's machinery on their property at his request. The court denied Kirschner's request that subpoenas be issued to compel the first day's witnesses to return to court.

Kirschner put several defense witnesses on the stand, including the representative of a creditor who testified that he had had no difficulty locating a truck of Yagow's that his company repossessed. The jury found Yagow guilty on all eleven counts, and the court sentenced him to twenty-one months in prison, followed by a two-year period of supervised release. The court also ordered Yagow to turn over to Production Credit the property on which it holds a mortgage and to pay to the court a special assessment of $550. This appeal followed.

I.

Yagow's attorney argues that his client's conviction must be reversed because the district court failed to make any inquiry as to whether Yagow had knowingly and intelligently waived his right to counsel on the first day of trial. Yagow's attorney asserts that the failure of the district court to do so is particularly egregious since Yagow's "statements should have put the Court on notice that it was questionable whether the defendant was competent" to make a valid waiver.

The government argues that Yagow, by his insistence on self-representation and by his refusal to participate in the first day's proceedings, made a valid waiver of his right. Requiring the court to advise Yagow of the perils of self-representation under such circumstances "would be an exercise in futility," the government asserts.

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that an accused has the right under the sixth amendment to conduct his own defense. *Id.* at 818–21, 95 S.Ct. at 2532–34. Because the defendant exercising this right necessarily relinquishes the usual benefits associated with the right to counsel, he must make a knowing, intelligent and voluntary waiver. *Id.* at 835, 95 S.Ct. at 2541; *United States v. Christian*, 861 F.2d 195, 197 (8th Cir.1988), *cert. denied*, 493 U.S. 843, 110 S.Ct. 131, 107 L.Ed.2d 91 (1989). Although the defendant need not possess a lawyer's skill and experience to validly elect to represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)); *see also Patterson v.*

*Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988).

Acknowledging "the enormous importance and role that any attorney plays at a criminal trial," the Supreme Court has "imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him [to] waive his right to counsel at trial." *Patterson,* 108 S.Ct. at 2398 (citing *Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541–42).

█ Because the defendant who forgoes the right to counsel is abandoning the right that " 'affects his ability to assert any other rights he may have,' " *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 351, 102 L.Ed.2d 300 (1988), the district court should give the defendant a specific warning, on the record, of the dangers and disadvantages of self-representation. *See Berry v. Lockhart,* 873 F.2d 1168, 1170 (8th Cir. 1989); *Meyer v. Sargent,* 854 F.2d 1110, 1114–1115 (8th Cir.1988); *see also Young v. Lockhart,* 892 F.2d 1348, 1352 (8th Cir. 1989). Indeed, a model inquiry appears in 1 Bench Book for United States District Judges § 1.02 (3d ed.1986). The inquiry covers such areas as whether the accused understands his right to an attorney and the potential consequences of a conviction, whether he is familiar with the rules of evidence and criminal procedure, and whether he understands that he must abide by these rules. This type of inquiry not only impresses upon the defendant the significance of his decision, but also considerably enhances our ability to review the validity of the waiver. Had such a warning been given by the district court, we would be faced with a substantially different issue than the one we now address. *See Christian,* 861 F.2d at 197–98 (district court's extensive warnings established basis for valid waiver).

█ In the absence of a formal inquiry, we must review the entire record to determine if the defendant had the required knowledge from other sources. *Bumgarner v. Lockhart,* 920 F.2d 510, 512 (8th Cir.1990) *cert. denied,* — U.S. —, 111 S.Ct. 2898, 115 L.Ed.2d 1062 (1991); *Meyer,*

854 F.2d at 1115. In making this assessment, we look at the particular facts and circumstances of the case, including the defendant's background, experience, and conduct. *Bumgarner,* 920 F.2d at 512. In past cases, we have considered the defendant's education, his knowledge of or previous contact with the criminal justice system, his conduct at trial, and his motive for seeking to waive counsel. *See Meyer,* 854 F.2d at 114–15; *Bumgarner,* 920 F.2d at 512–13; *Berry,* 873 F.2d at 1170–71.

Yagow does not argue that his waiver was involuntary, so we need only decide whether the waiver was knowing and intelligent. There was no evidence in the record to show Yagow's level of education. The only evidence bearing on his knowledge of or contact with the criminal justice system was a statement at his detention hearing by a pretrial officer who testified that he found no record of any previous criminal conviction of Yagow.

Yagow's conduct in the courtroom is central to our inquiry. An examination of the transcript reveals that Yagow made no effort to mount a defense on the first day of trial. He refused involvement with juror selection, refused to make an opening statement, and did not cross-examine the government's witnesses. Throughout the day, he made no objections except to reiterate his belief that the court lacked jurisdiction. He persisted even after the court explained that the United States was a valid "moving party," and that it did not understand his jurisdictional theory. Yagow had the opportunity to consult with his appointed attorney at any point during the day but did not do so. He justified his motion to discharge Kirschner shortly before trial only by saying they were "not compatible."

Yagow's refusal to participate may also be considered against the backdrop of his past actions: his disappearance for ten months following his indictment and his total refusal to cooperate or participate during his arraignment.

We stated in *Meyer* that " 'the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right

for the purpose of delaying and disrupting the trial.'" 854 F.2d at 1113 (quoting *United States v. White*, 529 F.2d 1390, 1393 (8th Cir.1976)). Consonant with that principle, we have in the past rejected claims of invalid waiver when the record demonstrated that the accused was primarily attempting to obstruct or manipulate the legal process. *See Meyer*, 854 F.2d at 1114–15 (defendant's actions in seeking new counsel halfway through trial and then electing to proceed pro se were largely obstructionist and constituted "major factor" in court's conclusion that defendant made a valid waiver); *Bumgarner*, 920 F.2d at 512–13 (defendant's request on the day of trial for a continuance so that he could retain an attorney after he had previously insisted that he be allowed to proceed pro se constituted a "ruse").

Other circuits have also relied on the manipulative or obstructive nature of the defendant's request to represent himself to conclude that the defendant made a valid waiver of the right to counsel. *See United States v. Willie*, 941 F.2d 1384, 1388–91 (10th Cir.1991); *United States v. Moya-Gomez*, 860 F.2d 706, 733–39 (7th Cir.1988), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Gallop*, 838 F.2d 105, 109–111 (4th Cir. 1988), *cert. denied*, 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

 After examining the record, we are convinced that on the facts and circumstances of this case, Yagow made a valid waiver of his right to counsel when he elected to proceed pro se on the first day of trial. Yagow's motion to represent himself was filed just four days before trial. He insisted on representing himself although counsel—whose competence or zealousness has not been challenged—was seated nearby. Throughout the first day, he adamantly refused to recognize the legitimacy of the proceedings and made no move to defend himself other than to voice his juris-

dictional objections. Moreover his past actions—his disappearance following the indictment and his complete refusal to participate in the arraignment—are strongly indicative of a desire to thwart the legal process. While the right to counsel is one of the most critical rights of the accused, it is not a tool to be manipulated at the defendant's whim or for his own purposes.

We thus reject Yagow's argument that his waiver lacked validity. We emphasize that our conclusion is based largely on the unique circumstances of this case, including what appears to be a studied pattern of obstructionism. We also observe that Yagow represented himself for only the first day of his three-day trial.

Although we affirm the judgment, we entertain no doubt that the district court failed to conduct the necessary inquiry. When a district court is faced with a request for self-representation, it is essential that the court conduct an inquiry similar to the one appearing in *Christian*, 861 F.2d at 197,[1] or in the Bench Book for United States District Judges, *supra*, at § 1.02.

## II.

Yagow next argues that the district court erred in failing to dismiss two counts of knowingly and fraudulently making false statements under penalties of perjury because the false statements did not concern a "material" matter[2] and were not made "in relation to" a bankruptcy case as required by 18 U.S.C. § 152.

The statements in question appeared in affidavits supporting Yagow's motions to proceed in forma pauperis in two separate lawsuits, one filed against Melroe challenging his actions as liquidating trustee and the other filed against several creditors. In the affidavits, Yagow falsely stated that he had not been employed since 1985 and that he had not received any income within the last twelve months.

---

1. *Christian* contains a representative portion of the district court's inquiry of the defendant. 861 F.2d at 197.

2. Although 18 U.S.C. § 152 does not expressly require that the false verification be made with

regard to a material matter, the courts have imposed such a requirement. *United States v. O'Donnell*, 539 F.2d 1233, 1237 (9th Cir.1976), *cert. denied*, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976).

Yagow argues that the only misrepresentations that are material within the meaning of 18 U.S.C. § 152 are those that relate to the assets of the bankruptcy estate.

■ We are aware of no Eighth Circuit case that addresses this issue. Cases in other circuits, however, reject such a narrow interpretation of the materiality requirement. In *United States v. Phillips*, 606 F.2d 884 (9th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980), the Ninth Circuit stated that "materiality is readily established," and does not require a showing that the creditors were harmed by the false statements. *Id.* at 887. Material matters include not only those pertinent to the nature and extent of the bankrupt's assets, but also include those pertinent to his financial transactions. *Id.* Moreover, statements designed to secure adjudication by a particular bankruptcy court are also material. *Id.* (citing *O'Donnell*, 539 F.2d at 1237). *See also United States v. Key*, 859 F.2d 1257, 1261 (7th Cir.1988) (materiality does not require showing that creditors were harmed by the false statements).

■ Under the *Phillips* definition, which we believe to be correct, Yagow's statements qualify as "material." A sworn statement attesting to Yagow's lack of employment and income concerns his financial transactions. It also related directly to Yagow's asserted indigency, which was the issue before the court. Moreover, if statements aimed at securing adjudication by a particular bankruptcy tribunal are "material," then statements aimed at securing a particular status before the tribunal—in forma pauperis—can also be considered material.

Yagow next argues that the two counts should have been dismissed because the statements were not made "in relation to" a bankruptcy case as required by the statute. Section 152 prohibits the knowing or fraudulent making of a false statement *"in or in relation to* any case under title 11...."* (emphasis added). The "in relation to" phrase has not been interpreted by this circuit, but we have no hesitancy in concluding that its broad language encompasses statements, such as Yagow's, that were made in cases arising from a central bankruptcy proceeding.

For the foregoing reasons, we affirm the judgment of the district court.[3]

---

3. In a separate brief filed pro se, Yagow reasserts the jurisdictional challenge that he made during the first day of trial. We conclude that his arguments raise no legitimate legal issues.