**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alonzo DAY, Defendant–Appellant.**

No. 92–2675.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1993.

Decided July 15, 1993.

Lee Lawless, St. Louis, MO, argued for defendant-appellant.

Richard Poehling, St. Louis, MO, argued for plaintiff-appellee.

Before McMILLIAN, MAGILL and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Alonzo Day was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sen-

1. The HONORABLE EDWARD L. FILIPPINE, Chief Judge of the United States District Court for the Eastern District of Missouri.

tenced him to fifteen years in prison, the minimum mandated by § 924(e)(1), because of his prior convictions for violent felonies. Day appealed, and we remanded for resentencing, instructing the district court to assess the constitutional validity of any prior convictions used in imposing the § 924(e) enhancement. *United States v. Day,* 949 F.2d 973, 984 (8th Cir.1991). On remand, the district court determined that two prior convictions were invalid because the state courts had accepted guilty pleas without prior competency hearings. *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). With these convictions excluded, Day lacked the three qualifying prior convictions necessary to warrant a § 924(e) enhancement.

In redetermining Day's Guidelines sentence, the district court first held that the two invalid convictions could not be used to calculate his criminal history score. This placed Day in Criminal History Category V instead of Category VI, producing a Guidelines range of 33 to 41 months. The district court next departed upward under U.S.S.G. § 4A1.3, concluding that neither Category V nor VI adequately reflected the seriousness of Day's criminal history nor his potential for recidivism. The court imposed a sentence of sixty months. Day appeals. We affirm.

### I.

■ Day first contends that the district court failed to provide adequate notice of its intent to make an upward departure, as required by *Burns v. United States,* — U.S. —, —, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991). A review of the sentencing's procedural history shows that this contention is without merit.

Day's initial presentence report placed him in Criminal History Category VI and suggested that "[a]n upward departure may be warranted [under § 4A1.3] as Day's criminal history category of VI does not adequately reflect the defendant's criminal history." At the first sentencing, the district court concluded that no upward departure was warranted because § 924(e) mandated a minimum fifteen year sentence. On remand, after discarding the § 924(e) enhancement be-

cause of invalid prior convictions, the district court took a recess to recalculate Day's Guidelines sentence. During the recess, the prosecutor served a one page "update" to the PSR which stated:

> [T]he criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to 4A1.3.... In this case, the defendant has two uncounted prior convictions [for] Battery by a Prisoner Serving Less Than Life, and Assault with a Deadly Weapon by a Prisoner. Therefore, it appears that the defendant's criminal history category does not adequately reflect the seriousness of the defendant's prior record or the likelihood that the defendant will commit other crimes.

After the recess, Day and his attorney confirmed that they had reviewed the update but made no objection to this procedure. Thus, we review the *Burns* contention only for plain error. *See United States v. Paslay,* 971 F.2d 667, 674 n. 13 (11th Cir.1992).

*Burns* dealt with an unanticipated *sua sponte* departure by the sentencing judge. Here, on the other hand, the PSR initially suggested an upward departure from Category VI, but that became moot when Day received a lengthy mandatory minimum sentence. After he was placed in Category V with no mandatory minimum, Day should have anticipated that the departure issue would revive, yet he did not object nor request more time to prepare when the updated PSR was delivered immediately following the court's § 924(e) ruling. Thus, there was no procedural plain error. Moreover, Day's conclusory assertion that proper notice would have enabled him "to present evidence [and] address the legal issues" falls short of the required showing of prejudice. *See United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993); *United States v. Wright,* 873 F.2d 437, 445 (1st Cir.1989).

### II.

■ Section 4A1.3 authorizes an upward departure "when the criminal history category significantly under-represents the serious-

ness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." To impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category. If the court reaches the highest criminal history category, Category VI, and concludes that the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range. *See United States v. Lara–Banda,* 972 F.2d 958, 959–60 (8th Cir.1992); *United States v. Anderson,* 886 F.2d 215, 216 (8th Cir.1989). Day argues that, in departing upward, the district court failed to "consider the next most serious criminal history category, which in the present case would have been a VI." We disagree.

Day's PSR assigned him eighteen criminal history points, well above the Category VI threshold of thirteen; the probation officer suggested a § 4A1.3 upward departure from that category. On remand, the district court decided that the invalid convictions could not be considered in calculating Day's criminal history score. This reduced the score six points, placing Day in Category V. The district court found, however, that "there's reliable information here that indicates that the criminal history category, *whether category 5 or 6,* does not adequately reflect the seriousness of the defendant's past criminal conduct and the likelihood the defendant will commit other crimes." (Emphasis added.) That determination prompted the following colloquy:

> DEFENDANT DAY: Your Honor, according to the sentencing guidelines and various decisions, the departure is supposed to be in stages ... and not just a massive jump from, say, the level that I'm at, 33 to 41 months ... and the various cases state that that's the way a departure is supposed to occur.

THE COURT: Yes.

DEFENDANT DAY: And the judge is supposed to give various reasons, state in the record the reasons for it.

THE COURT: I have given the reasons already why, and I have departed, actually, from the [base offense] level 14 in criminal history category 5, to level 18, which is a category between 51 and 63 months, and I picked 60 months within that particular guideline range.... I based it upon the fact that, as I've indicated previously, of your past conduct. And that the criminal history category does not adequately reflect that at all.[2]

Thus, the record confirms that the district court did consider whether Day should be sentenced within Category VI. Neither the text of § 4A1.3 nor our precedents require a "ritualistic exercise in which [the sentencing court] mechanically discusses each criminal history category it rejects en route to the category that it selects." *United States v. Lambert,* 984 F.2d 658, 663 (5th Cir.1993) (en banc). The district court adequately explained why it concluded that Categories V and VI significantly under-represent Day's criminal history and the likelihood he will commit other crimes. Therefore, the district court properly applied § 4A1.3. In addition, we have reviewed the upward departure to sixty months under our familiar three-step analysis and conclude that it is reasonable. *See United States v. Sweet,* 985 F.2d 443, 445 & n. 2 (8th Cir.1993).

### III.

Citing *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), Day next contends that the district court erred in relying on the two constitutionally invalid convictions to justify a § 4A1.3 departure. The third sentence in Application Note 6 to

---

**2.** We note that the district court's method of calculating the final upward departure, proceeding down the sentencing table to a higher offense level, is substantially the method later adopted by the Sentencing Commission in its November 1, 1992, amendment to § 4A1.3:

> [T]he court should structure [an upward departure from Criminal History Category VI] by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

*See* U.S.S.G.App.C. No. 460, at 283–84.

§ 4A1.2 expressly provides that "the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3." [3] The district court stated that it was considering the conduct underlying the two invalid convictions, not the convictions themselves; thus, *United States v. Norquay*, 987 F.2d 475, 481–82 (8th Cir.1993), which involved uncounseled prior convictions, is clearly distinguishable. Day does not deny that he committed the acts in question—at one point while arguing the competency hearing issue, Day stated that "the assault occurred as a result of me hearing voices and hallucinations." In these circumstances, the district court did not err in applying § 4A1.3. *See United States v. Elliott*, 992 F.2d 853, 857–58 (8th Cir.1993).[4]

## IV.

During the proceedings on remand, Day objected to each of the three counsel appointed to assist him. He represented himself at the sentencing hearing with the help of the third appointee as standby counsel. On appeal, with our leave, Day has filed pro se briefs raising numerous issues in addition to those raised by appointed counsel. We have carefully considered each of these issues; only one is worthy of discussion.

Day argues that his third appointed counsel came to the sentencing hearing unprepared; that the district court violated his Sixth Amendment right to be represented by effective counsel when it forced him to choose between proceeding with unprepared counsel and proceeding *pro se;* and that the court erred in allowing him to proceed *pro se* without adequately inquiring into the validity of his waiver of counsel and his competency to make that waiver. *See Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

The waiver of counsel was voluntary. At the start of the hearing, after Day alleged that court-appointed counsel was unprepared, counsel represented that he had read "just about everything that's been filed, all of [Day's] records, [and had] contacted [Day's] previous counsel [who] made available all of the records and information he had gathered on Mr. Day." When the district court objected to any further delay of the sentencing hearing, Day told the court three times that he would prefer to proceed on his own. During the ensuing proceedings, counsel interjected comment and argument quite frequently, and Day made use of the extensive materials prepared by prior counsel for the first sentencing hearing. Thus, Day was not "offered the 'Hobson's choice' of proceeding . . . with unprepared counsel or no counsel at all." *Gilbert v. Lockhart*, 930 F.2d 1356, 1360 (8th Cir.1991).

Day's waiver was also knowing and intelligent. In *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 2397, 101 L.Ed.2d 261 (1988), the Supreme Court adopted a "pragmatic approach" to the issue of Sixth Amendment waiver of counsel, "asking what purposes a lawyer can serve at the particular stage of the proceedings." Sentencing hearings demand much less specialized knowledge than trials; for instance, the Federal Rules of Evidence do not apply in sentencing hearings. Fed.R.Evid. 1101(d)(3).

The district court emphasized to Day that he "could consult with . . . counsel" as much as he pleased, and he took advantage of standby counsel's assistance. *See Patterson*, 487 U.S. at 292, 108 S.Ct. at 2394 (defendant must be "made sufficiently aware of his right to have counsel"). Day's criminal record evidences a history of previous contact with the criminal justice system "sufficient to give him a general knowledge of the dangers and dis-

---

**3.** The note reflects a basic principle of the Criminal History section of the guidelines: "Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." U.S.S.G. Ch. 4, Pt. A, intro. comment. "Statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times." *Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 521, 121 L.Ed.2d 391 (1992).

**4.** *Elliott* construed the second sentence in Application Note 6 to § 4A1.2. It directly controls Day's further contention that the district court erred in using a third prior conviction—also allegedly invalid for lack of a competency hearing—to calculate his criminal history score.

advantages of self-representation." *Meyer v. Sargent*, 854 F.2d 1110, 1114–15 (8th Cir. 1988). Day's conduct at the hearing demonstrates that he had a sophisticated understanding of the hearing's purposes and procedure. And there is nothing in the record to suggest that further delay and a fourth appointed counsel would have produced a different sentence.

█ Finally, Day's contention that the district court should have conducted a competency hearing before allowing him to proceed *pro se* is without merit. "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, ⸺ .U.S. ⸺, ⸺, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993). "As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendants competence." *Id.* at ⸺, 113 S.Ct. at 2688 n. 13. Here, the district court expressly found that it had no reason to doubt Day's competence; our review of the record is consistent with that finding. Consequently, a further inquiry into Day's competency to waive his right to counsel was unnecessary.

The transcript of the sentencing hearing demonstrates that Day, with standby counsel's assistance, effectively represented his own interests in the manner he desired. There was no violation of his Sixth Amendment right to counsel.

The judgment of the district court is affirmed.