**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harry VELTMAN, III, Defendant–
Appellant.**

No. 93–1761.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 11, 1993.

Decided Nov. 18, 1993.

Rehearing and Suggestion for Rehearing En
Banc Denied Jan. 4, 1994.

Douglas Peine, St. Paul, MN, argued, for defendant-appellant.

Patricia R. Cangemi, Minneapolis, MN, argued (Francis X. Hermann, Patricia R. Cangemi and Ziad Amra, on the brief), for plaintiff-appellee.

Before JOHN R. GIBSON, MAGILL and LOKEN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Harry Veltman, III appeals from an order of the district court[1] committing him for treatment of mental disease or defect under 18 U.S.C. § 4245 (1988). The sole issue raised on appeal is Veltman's lack of representation by counsel at the hearing. More specifically, Veltman contends that the magistrate judge[2] made no inquiry into his legal experience or knowledge despite his demonstrated inability to understand the fundamentals of trial procedure. We affirm the judgment of the district court.

A California court convicted Veltman for mailing obscene and threatening materials in violation of 18 U.S.C. §§ 1461 and 876 (1988). Veltman sent the offending mailings to Katarina Witt, an Olympic ice skater and television personality. Following a referral to the Federal Medical Center in Rochester, Minnesota, for evaluation, the staff recommended commitment pursuant to section 4245 in order to provide Veltman with psychiatric treatment. After the government filed a motion to determine present mental condition, the court appointed the Office of the Public Defender to represent Veltman. Veltman's appointed counsel, Katherian Roe, subsequently sought to withdraw, stating that Veltman refused her representation and wanted to represent himself. At the commitment hearing before the magistrate judge, Veltman again said he wanted to proceed *pro se*. The court assured Veltman that he could represent himself, but asked Ms. Roe to remain available at counsel table throughout the proceeding. Veltman declined the judge's offer to postpone the hearing for additional preparation time.

At the hearing, Dr. Thomas Kucharski, a forensic psychologist, testified that he coordinated the psychiatric unit which examined Veltman. He stated that he had reviewed Veltman's file (including numerous letters to Ms. Witt), discussed Veltman's history with Veltman's mother, and engaged in limited conversations with Veltman. Dr. Kucharski said he thought that Veltman suffered from

1. The Honorable Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

2. The Honorable Jonathan G. Lebedoff, United States Magistrate Judge for the District of Minnesota.

"schizophrenia of the paranoid type, with both paranoid and grandiose delusional thinking" with "significant erotomania." He described erotomania as an unrealistic and delusional-based belief that one has a romantic relationship with a disinterested third party. He believed that Veltman demonstrated this condition in his conduct leading to his conviction. He further testified that Veltman posed a threat to others if released, particularly since his past behavior included increased stalking of Ms. Witt and progressively violent letters.

The magistrate judge recommended that the government's motion to commit be granted. After considering objections filed by Veltman and conducting a *de novo* review of the entire record, the district court ordered commitment pursuant to section 4245.[3] This appeal followed.

Veltman contends that the commitment order must be reversed because the magistrate judge failed to adequately inquire as to whether Veltman knowingly and intelligently waived his right to counsel. Veltman further argues that his inadequate representation and subsequent commitment cast serious doubt as to whether he possessed the competence required to waive his right to counsel.

·· The parties do not dispute that the governing statutes provide for representation by counsel at commitment hearings brought under section 4245(a). *See* 18 U.S.C. §§ 4245(c), 4247(d) (1988). The issue before us is under what conditions this right to counsel may be waived. There is no explicit guidance for us on this issue with respect to a section 4245(a) commitment. Therefore, it is necessary that we compare it with the waiver of the right to counsel in other contexts, particularly the full criminal trial.

The Sixth Amendment guarantee of "assistance of counsel" reflects the vital role which counsel serves in protecting a criminal defendant's rights. U.S. Const. amend. VI; *see*

*Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988) (defendant's loss of counsel "affects his ability to assert any other rights he may have"). Nonetheless, the Supreme Court has established that the right to counsel, even in a criminal trial, can be waived. *Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975). Although most "defendants could better defend with counsel's guidance than by their own unskilled efforts," the "right to defend is personal" and "must be honored." *Id.* at 834, 95 S.Ct. at 2540–41.

Veltman correctly argues that, at least in the context of criminal trials, a defendant may represent himself only if he makes a "knowing, intelligent, and voluntary waiver" of his Sixth Amendment right to counsel. *United States v. Yagow,* 953 F.2d 427, 430 (8th Cir.) (citing *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541) *cert. denied,* —— U.S. ——, 113 S.Ct. 103, 121 L.Ed.2d 62 (1992). This standard is case-specific "because the 'ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.'" *Meyer v. Sargent,* 854 F.2d 1110, 1114 (8th Cir.1988) (quoting *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984)). To assure that a defendant has adequate knowledge about his decision to proceed *pro se* at a criminal trial, a "district court should give the defendant a specific warning, on the record, of the dangers and disadvantages of self-representation." *Yagow,* 953 F.2d at 431. This warning should address the availability of an attorney and the defendant's relative familiarity with trial procedure.[4] *See id.* (directing district courts to model inquiry contained in 1 Bench Book for the United States District Judges § 1.02 (3d ed. 1986)). Absent such an inquiry, we "must review the entire record to determine if the defendant had the required knowledge from other sources." *Id.* The magistrate judge

---

3. The motion for commitment and the order entered by the district court referred only to section 4245, and both simply referred to treatment until Veltman "is no longer in need of such custody for care or treatment." Section 4245(d) continues with the phrase, "or until the expiration of the sentence of imprisonment, whichever occurs earlier." It is evident that the motion and order

before us was filed under section 4245 and must be read as including this final proviso.

4. Despite our holding in this case, we feel such warnings are advisable before permitting a waiver of counsel in a commitment proceeding.

did not conduct an inquiry as recommended in *Yagow*. Nevertheless, the proceeding before him was one for civil commitment and treatment for a mental condition, and not a criminal trial as in *Yagow*. The right to counsel varies depending on the context in which it is invoked, as do the requisites for waiver. *Compare Yagow*, 953 F.2d at 431 (waiver during criminal trial) with *Fare v. Michael C.*, 442 U.S. 707, 724–27, 99 S.Ct. 2560, 2571–73, 61 L.Ed.2d 197 (1979) (waiver in context of police interrogation).

■ The waiver was with respect to civil commitment proceedings under section 4245(a), seeking to determine whether and where treatment would be given for Veltman's mental condition, as part of the service of his sentence. Unlike a criminal trial which requires proof of guilt beyond a reasonable doubt, such proceedings seek to resolve only limited issues—whether "there is reasonable cause to believe that the person may presently be suffering from a mental disease ... [for] which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); *see United States v. Day*, 998 F.2d 622, 626 (8th Cir. 1993) (waiver valid in part because "[s]entencing hearings demand much less specialized knowledge than trials"). Given this contrast between a section 4245 proceeding and the criminal trial, we are satisfied that the statutory right to counsel may be waived in a section 4245 proceeding under conditions less exacting than the Sixth Amendment requirements in a criminal trial. The text of section 4247(d), detailing the nature of the hearing to be conducted, provides little guidance regarding when a waiver should be permitted. However, Congress decided not to offer the full procedural protections available in criminal trials. *See* 18 U.S.C. § 4245(a), (c); § 4247(d) (no jury trial). Rather, Congress apparently sought to satisfy the Supreme Court's holding in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980),

requiring certain due process protections for prisoner transfers to mental hospitals. Although due process may place limits on a defendant's ability to waive counsel in a section 4245(a) proceeding, these due process rights were not violated.[5]

■ We review the magistrate judge's factual findings regarding Veltman's waiver under the clearly erroneous standard; however, the ultimate determination of whether a valid waiver occurred is reviewed *de novo. United States v. Barahona*, 990 F.2d 412, 418 (8th Cir.1993); *United States v. Winn*, 969 F.2d 642, 643 (8th Cir.1992). The relevant facts are undisputed. Thus, we need only consider whether, on these facts, Veltman's waiver was effective.

■ The record demonstrates that Veltman made a valid waiver of his right to counsel in this civil commitment proceeding. First, Veltman waived counsel voluntarily and without coercion. Both the court's initial appointment of Ms. Roe to assist Veltman and the renewed offer of assistance at trial assure us that Veltman knew of the availability of appointed counsel. Yet, Veltman told the court, "Yes, it's my desire to represent myself." Ms. Roe informed the court that Veltman "appears to understand the issues involved." Veltman had one year of college education and was previously a commercial pilot. This education and training suggest that Veltman had the intellectual capacity required to understand the consequences of his decision. More importantly, the magistrate judge instructed Ms. Roe to remain available at counsel table, which she did, and the record shows that Veltman had two off-the-record conversations with Ms. Roe during the proceedings. *See Day*, 998 F.2d at 626–27 (participation of standby counsel relevant to determination that defendant's waiver of counsel at sentencing hearing did not violate Sixth Amendment). Veltman also de-

**5.** Several courts have stated that due process is implicated in the transfer of a prisoner to a mental health facility. *See Vitek*, 445 U.S. at 494–96, 100 S.Ct. at 1264–66; *Matthews v. Hardy*, 420 F.2d 607, 610–12 (D.C.Cir.1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970); *Baugh v. Woodard*, 604 F.Supp. 1529, 1536–39 (E.D.N.C.1985), *aff'd in part and*

*vacated in part*, 808 F.2d 333 (4th Cir.1987). However, none have held that due process requires the same scope of protections as provided in the context of criminal trials. For example, representation by a non-lawyer appears to satisfy the due process requirements. *Vitek*, 445 U.S. at 496–500, 100 S.Ct. at 1265–68; *Baugh*, 604 F.Supp. at 1538–39.

clined the court's offer to postpone the hearing to allow additional time for preparation. The record does not show that Veltman conducted himself inappropriately during the hearing. Although Veltman did not cross examine or call any witnesses, his performance at the hearing was not so inadequate as to demonstrate his inability to knowingly waive counsel. Even where the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored." *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2541. The Supreme Court has stated that "the competence that is required of a defendant seeking to waive his right to counsel is the competence *to waive the right,* not the competence to represent himself." *Godinez v. Moran,* —— U.S. ——, ——, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) (emphasis in original).

 We are similarly unpersuaded by Veltman's argument that his commitment to a mental health facility demonstrates his inability to waive counsel. Whether an individual possesses sufficient capacity to knowingly waive his right to counsel is no longer distinct from the question of his competency to stand trial. *Godinez,* —— U.S. at ——, 113 S.Ct. at 2686.[6] The mere fact that Veltman needed "custody for care or treatment in a suitable facility" does not mean he lacked sufficient capacity to decide to proceed *pro se.* 18 U.S.C. § 4245(a). The purpose of the waiver doctrine "is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision [to proceed unassisted] is uncoerced." *Godinez,* —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12 (emphasis omitted). After carefully reviewing the record, we affirm the district court's determination that Veltman possessed sufficient mental capacity to waive his statutory right to counsel in his section 4245 hearing.

We have considered the allegations and requests contained in Veltman's separate *pro se* brief and find them without merit. Velt-

man does not challenge his representation by appellate counsel.

We affirm the district court's commitment order.

---

**6.** *Godinez* effectively altered the prior rule in this circuit requiring a higher competency standard for waiving counsel than for standing trial. *See Blackmon v. Armontrout,* 875 F.2d 164, 166 (8th Cir.) (criminal defendant found competent to stand trial, but denied the ability to represent himself because of mental illness), *cert. denied,* 493 U.S. 939, 110 S.Ct. 337, 107 L.Ed.2d 326 (1989).