# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4193

_____

| United States of America, | * |
|---|---|
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Darrell Theodore Kind, also known as | * |
| Troy Swan, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  June 15, 1999

Filed:  October 15, 1999

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and BYRNE,* District Judge.

_____

LOKEN, Circuit Judge.

Darrell Theodore Kind appeals his conviction and sentence for three federal firearm offenses.  His appointed appellate counsel argues that the district court[1] erred

_____

*The HONORABLE WILLIAM MATTHEW BYRNE, JR., United States District Judge for the Central District of California, sitting by designation.

[1]The HONORABLE PAUL A. MAGNUSON, Chief Judge of the United States District Court for the District of Minnesota.

in allowing Kind to represent himself at trial, in denying him reasonable access to adequate legal resources to prepare for trial, and in denying him a two-level sentencing reduction for acceptance of responsibility. In addition, we granted Kind leave to file a pro se supplemental brief in which he raises eight additional issues -- error in refusing to sever one count, two issues relating to the elements of the firearm offenses, double jeopardy and jury instruction errors, and three sentencing errors. We affirm.

## I. Background

Kind is a young man with a long history of minor and not-so-minor criminal offenses in Missouri, Colorado, and Minnesota. Two of those prior offenses are relevant to this appeal. In November 1994, Kind pleaded guilty in a Minnesota state court to the felony of aggravated harassment and received a sentence of sixty days in prison and three years probation. In November 1996, he was charged in another Minnesota state court with two felony counts of terroristic threats.

On December 20, 1996, Kind purchased a twelve-gauge pistol-grip shotgun from a federally licensed firearms dealer in Minnesota. Using the assumed name of Troy Swan, Kind falsely stated on the federal firearms acquisition form (ATF Form 4473) that he was not a convicted felon and had no pending felony charges against him. Based upon this transaction, Kind was charged with making false statements during a firearms purchase in violation of 18 U.S.C. § 922(a)(6), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and receipt of a firearm by an indicted person in violation of 18 U.S.C. § 922(n).

After making numerous pretrial motions, Kind's initial appointed counsel moved to withdraw, citing a conflict with Kind and urging the appointment of Thomas Dunnwald as substitute counsel. That motion was promptly granted. Three months later, on the eve of trial, attorney Dunnwald filed a written motion to permit Kind to represent himself. After a hearing, the district court granted this motion, appointing

Dunnwald to serve as stand-by counsel and continuing the trial. Two months later, again on the eve of trial, Kind raised an insanity defense and moved for a psychiatric examination on that question. The district court granted the motion and again continued the trial. Mental health professionals at the Federal Medical Center in Rochester, Minnesota, examined Kind and reached conclusions negating an insanity defense.

The three-day trial began on June 30, 1998, with Kind representing himself. He cross-examined the government's witnesses, made opening and closing statements, and testified on his own behalf. Briefly stated, Kind's defenses were that Troy Swan was a legitimate assumed business name, that Troy Swan was not a convicted felon and was not charged with a felony at the time of purchase, and that his state probation officer had told him he was not a convicted felon because of the sentence he received for the aggravated harassment offense in 1994. Attorney Dunnwald attended the entire trial as stand-by counsel, frequently advising Kind on questions of trial tactics and procedure, and participating actively in all discussions outside the jury's presence, including the instructions conference. The jury convicted Kind of all three charges.

## II.  Waiver of Counsel

Kind argues that the district court erred in allowing him to waive his right to trial counsel without making an adequate inquiry into whether the waiver was knowing, intelligent, and voluntary, as required by Faretta v. California, 422 U.S. 806 (1975), and Godinez v. Moran, 509 U.S. 389 (1993). We affirm the grant of a defendant's motion to represent himself at trial "if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self representation." United States v. Patterson, 140 F.3d 767, 774-75 (8th Cir.), cert. denied, 119 S. Ct. 245 (1998). We review the determination that a valid waiver occurred *de novo*. See United States v. Veltman, 9 F.3d 718, 721 (8th Cir. 1993), cert. denied, 511 U.S. 1044 (1994). When the district court has not specifically warned the defendant of the dangers and disadvantages of self-

-3-

representation before granting the motion, "we must review the entire record to determine if the defendant had the required knowledge from other sources." United States v. Yagow, 953 F.2d 427, 431 (8th Cir.), cert. denied, 506 U.S. 833 (1992).

In this case, Kind's second appointed counsel filed a motion on the eve of trial stating that Kind had decided to represent himself "after consultation with his current appointed counsel and his own review of the Federal Rules of Criminal Procedure and applicable case law." The motion requested a hearing "pursuant to Faretta . . . to allow the Court to advise the defendant of his rights and privileges and to consider the request." The following occurred at the start of that hearing:

> THE COURT: Mr. Kind, your counsel has indicated . . . that you were desirous of proceeding as your own counsel in this matter. Is that a correct statement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You need to know you have a right to do that, so I will permit you to do it. I will also tell you, though, that there is an old adage around here that a person that represents [himself] has a fool for a client. And you have got to be pretty careful about this. Remember, this legal business is very complex and there are a lot of procedures and there are a lot of rules that need to be followed in the process.
>
> And that while there are certain things which the Court can answer questions for you . . . and there are certain things to which Mr. Dunne [the prosecutor] can answer questions for you . . . we have different roles. Mr. Dunne's role is to represent the government. His job is to prosecute. My job is to be a judge. That means that my job is to be an impartial arbitrator. So, when you are asking for this, I'm warning you today, don't expect very much help from either of us, because of the different roles that we play in the courtroom.

-4-

. . . [A]s I say, if you do want to represent yourself, it is a right that you do have. I think I would, nevertheless, appoint Mr. Dunnwald as stand-by counsel for you. So that when the matter does go to trial, Mr. Dunnwald would be here if circumstances should arise that counsel are needed and he is familiar with the matter. So, I do make that appointment.

The last thing I understand is that you have an interest in having the matter delayed for a period of time for your personal preparation for it, is that correct?

THE DEFENDANT: Correct.

THE COURT: We have had some discussion . . . [a]nd our thought is that the case could be called to trial either on April 13 or on April 20. Any problem with those dates?

THE DEFENDANT: No, sir.

The remainder of the hearing addressed whether Kind was receiving adequate access to legal materials while being detained in state correctional facilities.

Although the district court's warning of the dangers and disadvantages of self-representation was less instructional than might be necessary in other cases, we conclude it was adequate in this case. At the time of the Faretta hearing, two appointed counsel had filed numerous pretrial motions on Kind's behalf. The self-representation motion was prepared by counsel and stated that counsel had discussed the question with Kind. In granting the motion, the court specifically warned Kind that self-representation was ill-advised and hazardous and then appointed attorney Dunnwald as stand-by counsel. Dunnwald actively advised Kind throughout the trial, without interfering with Kind's self-representation before the jury, which he explained and justified while testifying in his own defense. Neither Kind nor counsel objected to the court's resolution of the self-representation issue, either at the Faretta hearing or at any

-5-

time during the trial. Based upon our review of the entire record, we affirm the district court's determination that Kind's waiver of his right to trial counsel was knowing, intelligent, and voluntary. Compare United States v. Day, 998 F.2d 622, 626-27 (8th Cir. 1993), cert. denied, 511 U.S. 1130 (1994).

Kind also argues that his later request for a psychiatric exam to explore an insanity defense demonstrates that the court should have explored his competency to waive counsel at the Faretta hearing. We disagree. "[A] competency determination is necessary only when a court has reason to doubt the defendant's competence." Godinez, 509 U.S. at 401 n.13. The district court had no reason to doubt Kind's competency at the time of the Faretta hearing, and nothing that occurred thereafter -- including the results of his examination at the Federal Medical Center and his conduct during trial -- should have caused the court to revisit this issue on its own motion.

### III. Access to Legal Resources

Kind argues he was denied due process because, as a pretrial detainee, he was not provided adequate legal resources to prepare his own defense. "Pro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law." United States v. Knox, 950 F.2d 516, 519 (8th Cir. 1991) (quotations omitted). But a pretrial detainee has no abstract right to law libraries or legal assistance; he must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

In this case, Kind rejected society's most fundamental guarantee of a fair trial -- the services of appointed counsel and all the resources at counsel's command to prepare and implement the best possible trial defense. After Kind was permitted to represent himself, he complained to the district court about limited access to legal materials at the state institutions where he was being detained. The court offered the assistance of stand-by counsel, and there is nothing in the record suggesting that stand-

by counsel refused to assist Kind in his preparation for trial.  The record shows that, while Kind was incarcerated in several state facilities prior to trial, he had access to legal materials in at least two of those locations.

Kind has totally failed to show that his defense at trial was prejudiced by any lack of legal materials.  We have serious doubts whether a pretrial detainee who exercises his constitutional right to represent himself at trial thereby becomes entitled to legal resources over and above what are provided to the general inmate population. See United States v. Taylor, 183 F.3d 1199, 1204-05 (10th Cir. 1999), and cases cited. But in any event, it is clear that the district court carefully protected Kind's right to a fair trial after he foolishly decided to represent himself.  The right to due process requires no more.  See United States v. West, 557 F.2d 151, 152-53 (8th Cir. 1977).

## IV.  Acceptance of Responsibility

Kind argues the district court abused its sentencing discretion by refusing to grant him a two-level reduction for acceptance of responsibility.  We affirm the denial of this adjustment unless that decision is clearly erroneous.  See United States v. Furlow, 980 F.2d 476 (8th Cir. 1992) (en banc), cert.denied, 508 U.S. 914 (1993). Relying primarily on cases from other circuits, Kind contends that he warrants the adjustment because he stipulated to the essential elements of Count Two and admitted elements of the other two counts in his opening statement and while testifying at trial. The district court found that Kind's taking the case to trial, and his testimony at trial, "did not and does not constitute acceptance of responsibility."  That decision is consistent with the Guidelines commentary, see U.S.S.G. § 3E1.1, comment. (n.2), and is not clearly erroneous.  "A defendant who maintains innocence, blames others, and expresses regret only for the consequences of criminal conduct does not accept responsibility within the meaning of § 3E1.1." United States v. Speck, 992 F.2d 860, 863 (8th Cir. 1993).

## V. Issues Raised Pro Se

A. Denial of a Severance. Prior to trial, Kind moved to sever counts which required proof of a prior conviction. This motion implicated Count Two, which required proof of a prior felony conviction, and Count Three, which required proof that Kind received a firearm while under indictment. The district court denied the motion, explaining that Kind failed to show clear prejudice because "the jury will be instructed as to the elements of each count." Kind renewed the motion at the start of trial, arguing it would be unduly prejudicial if the jury learned of his aggravated harassment conviction and terroristic threats indictment. The district court again denied the motion. During trial, the government offered to stipulate to the prior conviction and the pending indictment so that the jury would not learn the facts underlying those offenses. See generally Old Chief v. United States, 519 U.S. 172 (1997). Kind stipulated that he knew he was under indictment when he purchased the shotgun but refused to stipulate to the aggravated harassment conviction. The government then introduced a certified copy of state court records establishing the conviction, including the transcript of a plea hearing at which Kind admitted to the facts underlying the conviction and the trial judge warned him that federal law would now prohibit him from possessing a firearm.

On appeal, Kind concedes the three firearm charges were properly joined under Fed. R. Crim. P. 8(a) but argues the district court abused its discretion in denying his motion to sever Count Two from Counts One and Three. We review the denial of a defendant's motion to sever for "prejudice establishing an abuse of discretion." United States v. Rodgers, 732 F.2d 625, 630 (8th Cir. 1984). We have previously upheld the denial of motions to sever felon-in-possession charges on this ground absent a clear showing of prejudice. See United States v. Rogers, 150 F.3d 851, 856-57 (8th Cir. 1998), cert. denied, 119 S. Ct. 888 (1999); United States v. Brown, 70 F.3d 979, 980 (8th Cir. 1995), cert. denied, 517 U.S. 1114 (1996). Here, the government's evidence did not highlight the facts underlying the prior conviction and indictment, Kind refused to enter into a stipulation that would have further de-emphasized this aspect of the

government's case, and the government's proof of the elements of the three offenses was overwhelming. The district court did not abuse its discretion in refusing to sever these closely related charges.

B. Statutory Issues. Kind argues that he was not a felon in possession and did not violate 18 U.S.C. § 922(g)(1) because the state court stayed imposition of his aggravated harassment sentence and later restored his civil rights, rendering the crime a misdemeanor. We disagree. Section 922(g)(1) provides that it is unlawful to possess a firearm if the person has been convicted of a crime "punishable by imprisonment for a term exceeding one year." Under Minnesota law, the crime of aggravated harassment is punishable by imprisonment for more than one year. See Minn. Stat. Ann.§§ 609.02, subd. 2; 609.10, subd. 1; 609.749, subd. 3(3); ch. 244 App. § IV & § V, category IV (1999 Supp.). There is no evidence that Kind's right to possess firearms was restored under Minnesota law at the time he purchased the shotgun. See 18 U.S.C. § 921(a)(20); United States v. Matter, 818 F.2d 653, 654 (8th Cir. 1987).

Kind next argues the district court erred in not instructing the jury that a defendant must know his status as a convicted felon to violate § 922(g)(1). However, it is well settled in this circuit that the government need only prove defendant's status as a convicted felon and knowing possession of the firearm. See United States v. Holmes, 594 F.2d 1167, 1173 (8th Cir.), cert. denied, 444 U.S. 873 (1979).

Kind further argues the Double Jeopardy Clause bars his conviction for making false statements during a firearms purchase because he previously pleaded guilty in state court to a related charge. There is no double jeopardy bar against prosecution for the same or related offenses in both federal and state court. See, e.g., United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997).

Finally, Kind argues the district court erred at sentencing when it treated his conviction for aggravated harassment as a crime of violence for purposes of U.S.S.G.

§ 2K2.1(a)(2), which provides that the base offense level for a firearm possession offense is 24 if the defendant had at least two prior felony convictions of a crime of violence. The Guidelines define "crime of violence" as an offense that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a), incorporated by reference in § 2K2.1 comment. (n.5). Kind was charged with an aggravated harassment offense because he "possesse[d] a dangerous weapon at the time of the offense." Minn. Stat. Ann. § 609.749, subd. 3(3) (1999 Supp.). Assuming this offense can sometimes be committed without violence, we look to the facts or charging instruments underlying Kind's offense to determine whether it was a crime of violence under the Guidelines. See United States v. Wright, 957 F.2d 520, 522 (8th Cir.), cert. denied, 506 U.S. 856 (1992). The state court complaint alleged that Kind harassed a female acquaintance at her residence and retreated to her garage with a firearm when the police arrived. The victim told police Kind had threatened to "blow the whole city up," which she took to mean that Kind would "shoot a lot of people," including herself. On this record, we agree with the district court that Kind committed a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1). As we said in United States v. Rodriguez, 979 F.2d 138, 141 (8th Cir. 1992), "It matters not one whit whether the risk ultimately causes actual harm. Our scrutiny ends upon a finding that the risk of violence is present."

C. Other Issues. Kind argues the district court erred in admitting evidence he used the assumed name "Troy Swan" to buy the shotgun because that was a lawfully assumed business name. The short answer to this contention is that use of a name other than his own assisted Kind in covering up his criminal history, thereby falsifying the

ATF Form 4473 in violation of 18 U.S.C. § 922(a)(6).  Kind further argues the district court erred in not permitting him to collaterally attack the constitutional validity of his prior state court conviction, a contention foreclosed by United States v. Custis, 511 U.S. 485 (1994).  Finally, he argues the district court violated Fed.R.Crim.P. 32(c)(1) by not making specific findings as to all controverted matters in the Presentence Investigation Report.  After careful review of the sentencing record, we conclude that contention is without merit.

The judgment of the district court is affirmed.  We thank appointed counsel for his assistance to the court and Mr. Kind.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.