# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 10, 2014          Decided July 25, 2014

No. 12-3097

UNITED STATES OF AMERICA,
APPELLEE

v.

BARRY WILLIAM GEWIN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cr-00366-1)

*Cheryl D. Stein* argued the cause and filed the briefs for appellant.

*Elizabeth D. Collery*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Mythili Raman*, Acting Assistant Attorney General. *Demetra D. Lambros*, Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney, entered appearances.

Before: BROWN, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Concurring opinion filed by *Circuit Judge* BROWN.

Concurring opinion filed by *Circuit Judge* PILLARD.

BROWN, *Circuit Judge*: Barry Gewin was convicted of securities fraud, wire fraud, and conspiracy to commit fraud. He was sentenced to nine years in prison and ordered to pay almost $2 million in restitution jointly and severally with his co-conspirators and a $500,000 fine. The sentencing court found Gewin had about $650,000 available to him at the time of sentencing and ordered him to turn those funds over to the court as partial payment of his financial obligations. Two years later, the court held a hearing because Gewin had paid only a negligible amount toward his fine and restitution. Gewin assured the court payment would be forthcoming, but subsequently delivered to the clerk of court only a fictitious International Bill of Exchange of his own creation.

In September 2007, the district court held a hearing to determine whether it should hold Gewin in civil contempt until he made the court-ordered payment. Gewin, appearing pro se, asserted no defense; was held in contempt; and remained incarcerated—with his original sentence suspended—for the next five years with little progress made in his case. Gewin never complied with the court's payment order or successfully asserted a defense to the contempt order. In 2012, Gewin filed a series of documents asserting he could not make the required payments. In November 2012, the district court ruled Gewin had not met his burden of making out an inability-to-comply defense, and ordered Gewin's contempt status continued. Gewin appealed the November 2012 order, for the first time challenging his contempt status in this court.

Gewin's primary argument on appeal is that the district court violated his Fifth Amendment right to due process by

holding him in contempt without appointing counsel to represent him. Gewin asks this court to vacate his contempt citation *nunc pro tunc* to September 5, 2007. We lack jurisdiction to hear Gewin's various challenges to the district court's 2007 order because Gewin failed to timely appeal that order. With regard to the 2012 proceedings, we hold Gewin waived any due process right to counsel he may have had. We deny Gewin's remaining challenges and affirm the order of the district court.

I

In 2003, a grand jury indicted Gewin and several co-defendants on counts of securities fraud, wire fraud, and conspiracy to commit securities and wire fraud. Gewin proceeded at trial pro se following a "wide-ranging colloquy" in which the court ensured Gewin understood his decision to proceed without a lawyer and the risks involved. *United States v. Gewin*, 471 F.3d 197, 199–200 (D.C. Cir. 2006). After a jury convicted Gewin of multiple counts, he hired counsel to represent him at sentencing. Gewin refused to provide the probation office with a full release of information for his financial records, and the court largely based its determination of Gewin's assets on a financial affidavit he had completed. The court found Gewin had available to him for payment of a fine and restitution $120,000 to $140,000 in a BB&T bank account; $150,000 that had been taken from that bank account to be given to Gewin's wife, Tommi Ferguson, but that Ferguson had not yet deposited in her own account; $5,898.82 in a Global Bank of Commerce Account in Antigua; about $270,000 in a Janney Montgomery Scott LLC account in Ferguson's name; and $85,643 in a Sky Bank account also controlled by Ferguson. The court held the accounts in Ferguson's name or under her control were available to Gewin, and considered those funds in its

sentencing determination. Thus, the court held Gewin had $651,541.82 available for the payment of a fine or restitution. On April 1, 2005, the court sentenced Gewin to imprisonment for 108 months, ordered Gewin to pay $1,975,786 in restitution, jointly and severally with his co-defendants, and imposed a $500,000 fine. The court also ordered Gewin to transfer all of the funds described above to the court in partial payment of the restitution and fine. Gewin, represented by new counsel, appealed his conviction and sentence, including, specifically, the determination that he was or would become able to pay a $500,000 fine—albeit without challenging the district court's finding of his control over Ferguson's accounts. A panel of this court affirmed the judgment of the district court. *See Gewin*, 471 F.3d 197.

In early 2007, after Gewin's appeal had concluded and at the government's request, the district court held a status conference regarding Gewin's failure to comply with the restitution and fine order. At that time, Gewin had paid only $1,325 toward his obligations. The court informed Gewin that if he failed to make the required payments and, in particular, to turn over the money in the accounts specified in the court's April 2005 judgment, the government would seek to hold him in contempt. The court also stated that if Gewin did not intend to pay, the court wanted to discuss whether Gewin was going to be represented by counsel for any contempt proceedings. The court told Gewin he could hire his own attorney or the court would appoint one for him. Gewin admitted responsibility for the outstanding fine and restitution and promised he could and would pay both in full. The court ordered payment by June 8, 2007.

Around June 8, the clerk of court received from Gewin a fictitious International Bill of Exchange in the amount of $2,500,000. The court issued an order to show cause why

Gewin should not be held in contempt and ordered Gewin be brought to court for a hearing on September 5, 2007. Gewin appeared pro se at the hearing and advanced no legitimate defense regarding his failure to pay. The court held Gewin in civil contempt until he paid the required restitution and fine. Gewin was already in prison serving his criminal sentence, and the court informed Gewin that time during which he was held in contempt would not count toward that sentence and would delay Gewin's ultimate release date, which had originally been projected for March 28, 2012. Gewin did not appeal the district court's contempt order.

In October 2007, Gewin wrote to the court asserting, for the first time, he was unable to pay his financial obligations to the court. Gewin stated he had spent his own assets on attorney's fees and living expenses and that the court could not order him to turn over Ferguson's funds. In December 2007, the court ordered the government to file a response to Gewin's letter addressing, in particular, whether Gewin could be held in civil contempt for failing to pay an amount that exceeded the $651,541.82 the court had found Gewin able to pay at his sentencing hearing. In September 2008, after receiving the government's response, the court clarified that Gewin was only being held in contempt until he paid $651,541.82, and the court acknowledged that inability to comply with a court order is a complete defense to a finding of civil contempt. Nevertheless, the court held Gewin had failed to establish the defense because his letter contained nothing but his own unsworn statement regarding his inability to make the required payment.

In July 2009, the government filed a notice reminding the district court of Gewin's continued civil contempt status. Gewin responded by filing a petition for a writ of habeas corpus and by stating he did not need the court to appoint an

attorney to represent him. The district court denied Gewin's collateral attack as procedurally barred and without factual or legal merit. Gewin did not appeal from this April 2011 decision by the district court.

In May 2011, the district court scheduled another status conference on Gewin's continued incarceration for civil contempt. The court appointed A.J. Kramer, the Federal Public Defender, as advisory counsel to Gewin. At a July 19, 2011 status conference, Mr. Kramer indicated he had offered to move to purge the contempt, but Gewin had declined. In response to questions from the district judge, Gewin reiterated this refusal on the record. Mr. Kramer told Gewin that if Gewin changed his mind, he could contact Mr. Kramer.

In February 2012, as Gewin's original release date was approaching, Gewin filed several challenges to his civil contempt status. He acknowledged evidence of his inability to pay had been requested years earlier, apologized for taking so long to respond, and explained he was distracted over the years by efforts to vacate his conviction. Gewin insisted he had no control over his wife's accounts and provided no information about what had happened to these funds. With respect to accounts in his name, Gewin said he spent the funds on legal and personal expenses. He attached assorted bank statements displaying a widely fluctuating balance. He also attached receipts showing various payments for legal expenses, but provided no documentation about the source of those payments. On the contrary, there was some evidence his relatives paid those expenses from previously undisclosed bank accounts. Gewin was unrepresented before the district court throughout 2012.

On November 6, 2012, after the government responded to Gewin's filings, the district court issued an order finding

Gewin had failed to demonstrate his current inability to pay the amounts owed and continuing to hold him in contempt. On November 19, 2012, Gewin filed this appeal challenging the district court's November 6, 2012 order.

While this appeal was pending, the government moved to terminate Gewin's ongoing civil contempt status. The government stated it no longer thought continued contempt would induce Gewin to comply with the court's orders. Accordingly, the district court terminated the contempt on October 24, 2013. The district court noted Gewin's contempt had added six years to his term of incarceration.

In this appeal, Gewin alleges various errors in both the district court's original 2007 contempt order and its more recent 2012 order continuing Gewin's contempt status. Gewin asks this court to vacate his contempt status *nunc pro tunc* and order that the entire time he has spent incarcerated for civil contempt be counted toward the fulfillment of his underlying sentence.

II

We begin by clarifying the scope of our jurisdiction and the standard of review. This appeal, filed on November 19, 2012, arises from the district court's November 6, 2012 order continuing to hold Gewin in civil contempt. Yet Gewin alleges certain errors arising from the district court's show-cause hearing on September 5, 2007 and the court's contempt finding of that date. Gewin failed to timely appeal the September 5, 2007 order, *see* 28 U.S.C. § 2107(b) (notice of appeal must be filed within 60 days after entry of order appealed from where the United States is a party), and we therefore lack jurisdiction to address alleged errors in the original contempt order, *see Bowles v. Russell*, 551 U.S. 205,

209–10 (2007) ("[T]he taking of an appeal [in a civil case] within the prescribed time is mandatory and jurisdictional."). The fact that the 2012 order related to the same continuing contempt as the 2007 order does not give us jurisdiction to hear an untimely appeal from an earlier order, which was itself an appealable final order. *Cf. In re Grand Jury Proceedings*, 795 F.2d 226, 229–30 (1st Cir. 1986) (holding a motion to purge contempt does not toll time for appeal of contempt order, nor can court hearing appeal of order denying a motion to purge review alleged errors in original contempt order); 15B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 3916, 3917 n.70 (2d ed. 1992 & Supp. 2014) ("It is . . . well settled that appeal from denial of a motion to vacate a judgment does not support review of the original judgment.").

At oral argument, Gewin's counsel suggested we have jurisdiction to review errors from the 2007 proceedings under equitable principles because Gewin's failure to appeal in 2007 resulted from his lack of counsel in the contempt proceedings. But even if we were inclined to adopt such an equitable principle, we "ha[ve] no authority to create equitable exceptions to jurisdictional requirements." *Bowles*, 551 U.S. at 214; *see Carrascosa v. McGuire*, 520 F.3d 249, 254 n.9 (3d Cir. 2008) (rejecting argument that previous counsel's failure to file timely notice of appeal could be excused because that argument "seeks essentially equitable relief from the time limit on appeals," which *Bowles* precludes). Gewin claims he is aided in this argument by *Rodriquez v. United States*, 395 U.S. 327, 331–32 (1969), which held that where a criminal defendant fails to file a timely appeal because he was not informed at sentencing of his right to appeal or that the clerk would, on request, file a notice of appeal for him, the defendant is entitled to resentencing so he may perfect a timely appeal. However, no case establishes an analogous

remedy for civil litigants. Indeed, the *Rodriquez* remedy is triggered when a district court fails to abide by Federal Rule of Criminal Procedure 32(j)(1), which requires a district court to advise a defendant of his right to appeal. *See id.* There is no such rule in civil cases. Furthermore, to the extent *Rodriquez* relied on equitable principles, we cannot transfer its reasoning to the civil context because the time limit for filing a civil appeal—as opposed to that for filing a criminal appeal—is jurisdictional. *See United States v. Byfield*, 522 F.3d 400, 403 n.2 (D.C. Cir. 2008).[1]

We have jurisdiction only to review errors arising from the November 2012 order from which Gewin appealed. Gewin may bring a challenge to the district court's decision not to purge the contempt at that time, but he cannot challenge the district court's original finding of contempt. Insofar as Gewin appeals the district court's 2007 contempt order, we dismiss that portion of the appeal.

Even with regard to the alleged errors properly before this court, Gewin failed to raise many of his objections—and we note below which ones in particular—before the district court. "To preserve a claim of error on appeal, a party typically must raise the issue before the trial court. No procedural principle is more familiar than that a right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having

---

[1] Gewin also suggested in rebuttal at oral argument that the 2007 order is reviewable because it is "inextricably bound up with" the 2012 order from which Gewin properly appealed. *See Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 434, 436 (D.C. Cir. 2010). But Gewin forfeited any such argument by failing to make it in his briefs or even in his opening remarks at oral argument. *See Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003).

jurisdiction to determine it." *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436 (D.C. Cir. 2010). Most of the arguments Gewin raises for the first time on appeal are forfeited. Therefore, Gewin will have to demonstrate error under a more onerous standard of review in order to obtain reversal.

"Generally, an argument not made in the trial court . . . will not be considered absent exceptional circumstances." *Id.* at 437. Exceptional circumstances include "cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice." *Flynn v. Comm'r*, 269 F.3d 1064, 1069 (D.C. Cir. 2001). Some courts, importing a standard from the criminal context, *see* FED. R. CRIM. P. 52(b), have indicated they will review unpreserved claims in civil cases for plain error. *See Salazar*, 602 F.3d at 437. A court reverses for plain error where the appellant demonstrates there is (1) a legal error that (2) is plain at the time of appellate review, (3) affects substantial rights of the parties, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*; *see also United States v. Olano*, 507 U.S. 725, 732 (1993). We have yet to determine whether the "exceptional circumstances" test and "plain error" review inquiries are coterminous. *Salazar*, 602 F.3d at 437. We need not decide this question now because, as we explain below, Gewin's forfeited arguments demonstrate neither exceptional circumstances nor plain error.

III

Gewin argues the district court violated his Fifth Amendment right to due process by not offering to appoint counsel to represent him through the contempt proceedings.

Gewin's argument primarily focuses on his right to counsel at the original contempt hearing in 2007. However, as explained above, Gewin's right-to-counsel claim is before us only as it relates to the proceedings leading up to the November 2012 order. We offer no opinion on whether Gewin had a right to counsel at his original contempt hearing.

With regard to the 2012 proceedings, the government argues Gewin forfeited his due process claim by not raising it before the district court and, therefore, we should not review that claim absent exceptional circumstances. Gewin responds that the right to counsel is not subject to forfeiture, and that the right may be waived only by an intentional relinquishment. Whether Gewin's claim was subject to forfeiture depends on whether the due process right to counsel is best analogized to other due process claims, which are subject to forfeiture, or to the right to counsel that emanates from other constitutional provisions, which generally cannot be forfeited. *Compare, e.g.*, *United States v. Barnes*, 295 F.3d 1354, 1366–67 (D.C. Cir. 2002) (reviewing for plain error a due process argument, not raised in district court, that defendant was not given notice his conduct constituted a crime), *Norwest Bank Neb., N.A. v. W.R. Grace & Co.*, 960 F.2d 754, 756–57 (8th Cir. 1992) (denying review of argument not made in district court that the application of the statute of limitations violated due process), *and In re Grand Jury Proceedings*, 875 F.2d 927, 931–32 (1st Cir. 1989) (holding criminal contemnor's failure to argue before the district court that show cause order violated due process right to notice and opportunity to prepare a defense "deprived him of any right to raise these matters on appeal" absent plain error), *with Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (requiring "intelligent waiver" of the Sixth Amendment right to counsel in criminal proceedings), *and Miranda v. Arizona*, 384 U.S. 436, 467–71 (1966) (holding an individual's failure

to ask for a lawyer prior to interrogation does not constitute waiver of the right to counsel derived from the Fifth Amendment's Self-Incrimination Clause). *But see United States v. Thomas*, 357 F.3d 357, 362–63 (3d Cir. 2004) (noting a defendant may forfeit his Sixth Amendment right to counsel through "extremely serious misconduct"). We need not decide in this case whether a civil defendant's claimed due process right to counsel is forfeited if not raised before the district court, however. Nor do we need to decide whether Gewin had a right to counsel under *Turner v. Rogers*, 131 S. Ct. 2507 (2011), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), which establish the framework for determining whether due process requires a civil contemnor be afforded counsel in a particular case. Even assuming *arguendo* Gewin had a right to counsel that was not forfeited, the record in this case demonstrates Gewin intentionally waived any such right.

The district court made clear to Gewin as early as April 2007 that, in the event the government moved for a finding of civil contempt against Gewin, he could obtain his own attorney or the court would appoint one for him. Supp'l J.A. 262–63, 286–87. While the offer to appoint counsel was not reiterated at the September 2007 show cause hearing, the district judge did make clear to Gewin the consequences of his being found in contempt, specifying both at that hearing and in a subsequent order that Gewin would be incarcerated until he complied with the court's payment orders and that the running of his criminal sentence would be suspended during that time.

Gewin's own actions and statements confirm that Gewin was aware of a general right to counsel and of the court's continuing ability and willingness to appoint counsel for him. Gewin had previously chosen to represent himself at trial. After an adverse jury decision, Gewin exercised his right by

hiring counsel to represent him at sentencing and on appeal. And Gewin chose to challenge before this court his waiver of trial counsel, receiving from us a decision rejecting his claim and finding his waiver knowing and voluntary. *See Gewin*, 471 F.3d at 198–200. In July 2009, Gewin filed a habeas petition in which he informed the court of his dissatisfaction with his previous representation, declared that he was competent to handle his own affairs, and stated that "no . . . attorneys need to be appointed" for him. Petition for Writ of Habeas Corpus, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C. July 30, 2009), ECF No. 558. In response, the district court confirmed its continuing "inclin[ation] to appoint counsel to represent Mr. Gewin and/or to consult with him regarding his own *pro se* representation if requested," but accepted Gewin's request that it not do so. Order of Nov. 19, 2009, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C.), ECF No. 563.

Moreover, in April 2011, the district court directed the Federal Public Defender's Office to meet with Gewin, and the court subsequently appointed the Public Defender himself, A.J. Kramer, as advisory counsel to Gewin in connection with the July 2011 status conference on his contempt. Mr. Kramer consulted with Gewin. Although Gewin declined to allow Mr. Kramer to file anything on his behalf at that time, Gewin knew Mr. Kramer remained available if he ever changed his mind and desired such legal representation. Tr. of Status Hearing at 6, July 19, 2011, Supp'l J.A. 357. The court explained that it had appointed Mr. Kramer to make sure Gewin was aware of all possible grounds on which he could seek to purge the contempt, *id.* at 5, Supp'l J.A. 356, and Mr. Kramer promised to keep in touch with Gewin, *id.* at 12, Supp'l J.A. 363. In short, by 2012, the district court had informed Gewin fully and repeatedly of the availability of appointed counsel to represent or assist him in the contempt

proceedings. Gewin was aware of the district court's offer of counsel, and his actions demonstrate that he knowingly and intelligently declined to accept.

Given all of these facts and circumstances, Gewin's decision to proceed pro se in his submissions to the court in 2012 are sufficient to constitute a waiver of any due process right to counsel he may have had in 2012. *Cf. Buhl v. Cooksey*, 233 F.3d 783, 789–90 (3d Cir. 2000) ("Waiver of the right to counsel depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."); *United States v. Veltman*, 9 F.3d 718, 721 & n.5 (8th Cir. 1993) (holding a prisoner's due process right to independent assistance when threatened with involuntary commitment to a mental hospital is subject to lower standard of waiver than Sixth Amendment right to counsel in criminal proceedings); *id.* at 721 ("The right to counsel varies depending on the context in which it is invoked, as do the requisites for waiver.").

We reiterate that our finding that Gewin waived his alleged right to counsel is not a decision that Gewin's due process claim could not be lost by means short of waiver. Furthermore, our decision is not a holding that Gewin in fact had a due process right to counsel. Rather, we hold simply that even if Gewin's due process claim was not forfeited, and even if Gewin had a right to counsel under the Due Process Clause, Gewin waived that right in the course of the district court proceedings. We will deny Gewin's due process claim.

IV

Gewin argues the district court erred in the 2012 proceedings by refusing to reopen the court's determination

made at the 2005 sentencing hearing that Gewin had control over the bank accounts in his wife's name or under her control. In his 2012 filings, Gewin argued he was unable to pay the fine and restitution because he did not have, and never had, control over his wife's accounts. The district court rejected this argument by relying on its finding at sentencing.

Gewin's argument implicates two distinct principles. The first is that present inability to comply is a complete defense to civil contempt. *See United States v. Rylander*, 460 U.S. 752, 757 (1983). The second is that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948). One of the factual bases of the district court's sentencing order was its finding that Ferguson's accounts could be used to pay Gewin's fine and restitution as of the time of sentencing. Gewin was not permitted to challenge this finding at the contempt proceedings. On the other hand, Gewin was permitted to argue in 2012 that he *no longer* had access to his wife's accounts. *See id.* at 76. The district court was bound to allow Gewin to "give any evidence of present conditions or intervening events which corroborate him." *See id.* For instance, if Gewin had presented evidence that between his 2005 sentencing and the 2012 contempt proceedings his wife had moved her assets to a different account to which Gewin had no access, the district court would be bound to consider whether Gewin still had access to his wife's assets. Alternatively, if Gewin had presented evidence that he had attempted in good faith to access the funds at issue but had been denied access by the relevant banks because he was not an account holder, and had been denied assistance in accessing the funds by his wife, the district court would have

been obligated to consider whether the facts found at sentencing were still true.

The district court correctly adhered to these principles. The court properly rejected Gewin's attempt to show he never had access to his wife's funds because such an argument was an attempt to reopen the factual basis for the 2005 sentencing. *See* Order of Nov. 6, 2012, at 6–7, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C.), ECF No. 602. The district court additionally recognized Gewin might be able to demonstrate *current* inability to access the funds but rejected any such argument on the merits. The court stated: "Gewin's 2012 filings provide no additional factual content suggesting cause to revisit [the 2005] finding." *Id.* at 7. The district court did not err in this finding because Gewin's 2012 filings were directed at attacking the court's 2005 determination rather than demonstrating any changed circumstances. *See* Gewin Letter of Feb. 6, 2012, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C.), ECF No. 581 (presenting no new facts and noting the relevant facts "have been before the court for 7 or 8 years"); Motion for Court's Acknowledgement, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C. Mar. 5, 2012), ECF No. 583 (resting defense on fraud allegedly perpetrated by the government at the 2005 sentencing); Supplement #1, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C. Mar. 15, 2012), ECF No. 585 (same). Gewin did not submit substantial evidence of a present inability to access his wife's funds.[2]

---

[2] Neither party has addressed whether this alleged error affected the outcome of the district court proceedings, and thus whether reversal would be warranted even if Gewin were able to demonstrate error. *See* FED R. CIV. P. 61 ("Unless justice requires otherwise, no error . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Muldrow ex rel. Estate of Muldrow v.*

V

In addition to the arguments already addressed, Gewin claims the district court made numerous other errors. Because these arguments are plainly meritless, we address them only briefly.

First, Gewin claims the district court erred by holding him in contempt without finding he had a present ability to pay. Whatever may be the case with regard to the district court's 2007 order, it is clear that in 2012 the district court considered and rejected Gewin's argument that he was unable to pay. The district court stated:

> Regrettably, because Gewin has once again declined the opportunity to provide the documents and information

---

*Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007). Since the district court also held Gewin had not shown he lacked present access to the funds that had been held in his own name as of the time of sentencing, *see* Sentencing Tr. at 104, Apr. 1, 2005, Supp'l J.A. 238, it is doubtful that simply prevailing on the issue of whether Gewin had access to Ferguson's funds in 2012 would have been sufficient to establish Gewin's inability to comply, at least partially, with the fine and restitution order.

Gewin does not argue on appeal that the district court erred in holding he had not met his burden in demonstrating he had dissipated his own funds by 2012. Indeed, Gewin is caught in a Catch-22 in this regard. If Gewin had been able to convince the district court he had spent his funds—and that he did not have access to Ferguson's accounts—he would have successfully made out a defense to civil contempt. But he also would have exposed himself to a charge of criminal contempt for willfully dissipating his funds in contravention of a court order. A criminal contempt conviction would likely have carried its own term of incarceration.

that would seem most readily to support a present inability to pay the fine and restitution amounts due and owing, he has failed to provide a basis upon which this Court should reconsider its Civil Contempt Order.

Order of Nov. 6, 2012, at 11–12, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C.), ECF No. 602. Because the court explicitly found Gewin had failed to meet his burden of proof in asserting an inability-to-pay defense, Gewin's claim that the court did not consider the defense at all must be rejected.

Second, Gewin claims the district court erred by holding him in civil contempt rather than acting under the provisions of 18 U.S.C. §§ 3613A and 3615. Although this alleged error would have been most properly raised in the context of the 2007 proceedings, we broadly construe Gewin's argument as challenging the power of the district court to continue Gewin's contempt sanction in 2012. But even as it relates to the 2012 order, this argument is forfeited because Gewin failed to assert it before the district court. Gewin has demonstrated neither plain error nor exceptional circumstances warranting reversal. The court's alleged failure to comply with the procedural dictates of § 3613A—even if error—was not prejudicial.[3] And nothing in § 3615, which

---

[3] 18 U.S.C. § 3613A requires that a court, in determining what action to take when a defendant is in default on payment of a fine or restitution, "consider the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order of a fine or restitution." 18 U.S.C. § 3613A(a)(2). The statute also states that, "[t]o the extent practicable," in a hearing held to address a defendant's default, the prisoner should participate via telephone or video conference without being removed from the prison in which he is confined. *Id.* § 3613A(b)(2).

provides that a defendant's willful failure to pay a fine is a misdemeanor punishable by fine or imprisonment for up to one year, suggests Congress meant the statute to preempt the courts' common law civil contempt power. Indeed, other statutes suggest the opposite. *See* 18 U.S.C. § 3613A(a)(1) ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may . . . hold the defendant in contempt of court . . . or take any other action necessary to obtain compliance with the order of a fine or restitution.").

Third, Gewin argues the length of his confinement for civil contempt demonstrates that at some point the contempt lost its coercive effect and became punitive. *Cf. Maggio*, 333 U.S. at 76 ("It is everywhere admitted that even if he is committed, he will not be held in jail forever if he does not comply. His denial of possession is given credit after demonstration that a period in prison does not produce the goods."). Because this claim was never presented to the district court, it is forfeited. Gewin has not met his burden of demonstrating his lengthy incarceration for contempt ever became punitive in nature. Indeed, he has identified no particular date as of which the incarceration became punitive, nor has he presented any evidence that would allow us to determine such a date. There is no evidence the contempt sanction had become punitive as of the district court's November 2012 order. On the contrary, it seems Gewin took no serious efforts to contest his contempt status until 2012, as his original release date was approaching. Indeed, Gewin admitted as much, conceding in a March 21, 2012 filing that he "probably did not handle this contempt issue properly," having "basically ignored it (except for [his] October 30, 2007 letter) over the years." Supplement #2, at 9, *United States v. Gewin*, No. 1:03-cr-00366 (D.D.C. Mar. 21, 2012), ECF No. 586. This suggests it was only in 2012—when it seems that, after numerous warnings by the district court that his criminal

sentence had been suspended, Gewin actually began to feel the reality of his contempt status—that the contempt sanction had the most *coercive* force. Gewin has shown neither plain error nor exceptional circumstances warranting reversal.

Finally, Gewin asks this case be reassigned to a different district judge for further proceedings that may arise during the court's supervision of his sentence. Although Gewin argues the "long and torturous history" of the case has "engendered some personal animus on the part of the trial court," Appellant's Br. 45, he points to no evidence of such animus. The protracted nature of the proceedings below does not justify reassignment of this case. *See Liteky v. United States*, 510 U.S. 540, 551, 555–56 (1994). We will deny Gewin's request for reassignment.

\* \* \*

For the foregoing reasons, Gewin's appeal is dismissed insofar as he challenges the district court's 2007 contempt order. Gewin's challenges to the November 2012 order are denied, and the order of the district court is

*Affirmed*.

BROWN, *Circuit Judge*, concurring: Being in full agreement with the court's opinion, I write separately only to emphasize that the Supreme Court has never articulated a presumptive right to counsel in the civil context. As Judge Pillard acknowledges in her concurrence, we are not dealing here with a Sixth Amendment right to counsel. The question is whether the Due Process Clause entitled Gewin to appointed counsel at his civil contempt proceeding. That determination—were it necessary for the court to decide it— would necessarily depend on a case-by-case assessment rather than a categorical rule. *See Turner v. Rogers*, 131 S. Ct. 2507, 2517–18, 2520 (2011); *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

Contrary to the implication of the concurrence, *Turner* does not craft a narrow exception to the general rule that an indigent litigant has a right to appointed counsel whenever he is threatened with the deprivation of his physical liberty. The Court in fact recognizes "the presumption that an indigent litigant has a right to appointed counsel *only* when, if he loses, he may be deprived of his physical liberty." *Turner*, 131 S. Ct. at 2516 (emphasis added). Thus, whereas the Supreme Court acknowledged the threat of incarceration is a *necessary* condition to the finding of a right to counsel in the civil context, the concurrence suggests such a threat is a *sufficient* condition to invoke a presumption of a right to counsel. Not so. *Cf. Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (holding a criminal offender facing revocation of probation and imprisonment does *not* have a right to counsel at a probation revocation hearing). Indeed, the Supreme Court makes this point exceedingly clear in the next paragraph of *Turner*: "[T]he Court previously ha[s] found a right to counsel "*only*" in cases involving incarceration, not that a right to counsel exists in *all* such cases (a position that would have been difficult to reconcile with *Gagnon*)." 131 S. Ct. at 2517.

*Turner* does not establish (or perpetuate) a presumption that an indigent civil defendant threatened with incarceration is entitled to counsel under the Due Process Clause.[1] On the contrary, the Supreme Court held that, rather than apply any presumption, courts are to evaluate a litigant's due process right to counsel claim under the familiar *Mathews v. Eldridge* framework. Under that framework, a court is to consider three factors: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *Turner*, 131 S. Ct. at 2517–18. The application of these three factors to Gewin's circumstances is complicated.[2]

---

[1] *Turner* overruled earlier cases from the Courts of Appeals to the extent they were inconsistent with this proposition, including *Walker v. McLain*, 768 F.2d 1181 (10th Cir. 1985). *See* Concurrence at 5. *Compare Turner*, 131 S. Ct. at 2520 ("[T]he Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)."), *with Walker*, 768 F.2d at 1185 ("[D]ue process does require, at a minimum, that an indigent defendant threatened with incarceration for civil contempt for nonsupport . . . be appointed counsel to assist him in his defense.").

[2] It is worth noting that the court does not decide the antecedent question of whether Gewin was indigent. Judge Pillard concludes that because Gewin owed as fine and restitution more than the district court had found his assets were worth, Gewin would have been unable to pay for his own lawyer at the civil contempt proceedings. But that conclusion ignores Gewin's experience at hiding his assets, and as an appellate court we are in no position to make an initial factual determination regarding Gewin's ability to hire a lawyer. Further, despite the district court's sentence, Gewin

While the threat of an indefinite period of incarceration "argues strongly for the right to counsel," *id.* at 2518, reasonable minds could differ as to the risk of erroneous deprivation or the nature of countervailing interests. Gewin appears to be a sophisticated litigant who sought counsel when he desired it and whose commitment offense involved financial fraud including concealment of assets. Indeed, Gewin's secretive and uncooperative attitude was largely responsible for the contempt finding and continually clouded the question of indigence.

\* \* \*

No doubt it would be a "best practice" for the district court, where it is clear that a civil contemnor has a due process right to counsel, to engage a civil defendant in a colloquy to ensure he understands his right. But to demand the colloquy because it would help a reviewing court determine whether waiver of the right was "knowing and intelligent" puts the cart before the horse. I need merely reiterate what the court's opinion makes exceedingly clear: we do not decide today whether such a high standard of waiver is necessary for a civil defendant to forgo a due process right to counsel. It is entirely possible that this court will, in a future case, conclude that this right, like so many others, can be lost by simple forfeiture. We need not, and do not, resolve this issue now.

---

was able to hire a lawyer to represent him before this court both on direct appeal from his criminal conviction and in the instant appeal. His indigence in 2007 was anything but certain.

PILLARD, *Circuit Judge*, concurring: The legal system is not functioning at its best when an uncounseled man serves six years in prison for civil contempt of court. Such an extraordinary period of imprisonment for contempt is especially troubling where, as here, the contemnor was evidently unable to afford a lawyer. The district court assumed when it held Barry Gewin in contempt in 2007 that he had a right to court-appointed counsel, but this case is before us because the court did not conduct a colloquy on the record at that time. It was not until 2011 that a waiver of that right was clear on the record.

As the court aptly explains, any 2007 deprivation of the right to counsel that Gewin may have suffered is beyond our power to remedy because he did not raise or appeal the lack of appointed counsel until now. Gewin here appeals from the 2012 order continuing his contempt. By the time the district judge entered that order, she had appointed the Federal Public Defender himself as advisory counsel. The Federal Public Defender had met with Gewin and made both concrete and ongoing offers of full representation, which Gewin declined. I concur in the court's opinion because I conclude that, in the circumstances of this case, the Federal Public Defender's in-person proffer of full and free representation, with the court's encouragement, and Gewin's refusal of that offer validly waived any right to counsel that Gewin may have had relating to the order under review.[1]

---

[1] I concur in the court's conclusion that Gewin waived his right to counsel, but I disagree with the court's reliance, even in part, on the fact that Gewin received a warning at his criminal trial informing him of the dangers of proceeding *pro se* and had chosen to represent himself through the criminal trial. *See* Slip Op. at 12-13. Gewin's right to counsel in the criminal proceedings derived from the Sixth Amendment. The civil contempt hearing, in contrast, was a separate and distinct civil proceeding. Any information Gewin received about his right to counsel during his criminal proceeding

I write separately to clarify two points. First, to the extent that there is any suggestion in the court's opinion that Gewin effectively waived his right to counsel before the Federal Public Defender appeared and Gewin refused his representation, I disagree that waiver could be accomplished by the limited and unclear communications on the record leading up to the Defender's appearance. Second, given the course of the contempt proceedings in the district court, it bears emphasis that, where a due process right to counsel attaches, a prompt and explicit colloquy on the record ordinarily is required before a court may find a valid waiver of that right.

One hopes an extended contempt imposed on an uncounseled person, without contemporaneous waiver of a right to representation, is exceedingly rare. But situations that prompt judges to use our contempt power tend to be fraught. Disobedient and disrespectful litigants understandably raise the risk of confusion and error. It is thus especially important to follow standard "best practices," such as the Civil Contempt Procedure set out in the Federal Judicial Center's Benchbook for U.S. District Court Judges, before imprisoning an uncounseled, indigent person for contempt of court.

\* \* \*

Gewin faced civil contempt because he did not pay the fine and restitution he owed under his felony sentence for securities and wire fraud and conspiracy. At sentencing, all of his identifiable assets totaled approximately $650,000, and the district court ordered him immediately to pay the full amount towards his $2.4 million fine and restitution obligation.

was insufficient to put him on notice that he had a similar right to counsel when faced with civil contempt.

Owing more than his known assets to the court, Gewin presumptively had no funds available to pay a lawyer during his subsequent civil contempt proceeding. An indigent civil contemnor facing a deprivation of his physical liberty is not automatically entitled to court-appointed counsel. But, the factors that tipped the due process analysis against appointing counsel in *Turner v. Rogers*, 131 S. Ct. 2507 (2011), favored it here, as the district court seems to have assumed. The district judge accordingly told Gewin at an April 2007 hearing that, if she had to resort to the contempt power to induce him to pay his fine and restitution, he could get his own lawyer or she would "appoint somebody since there are ramifications for you." Supp'l J.A. at 287. The court appears to have assumed, reasonably enough, that Gewin was indigent, given that the sentencing obligation of $2.4 million far exceeded the funds in his identified accounts.

Five months later, when Gewin failed to comply with the order to pay, the district judge held him in contempt. At the September 2007 contempt hearing, the judge did not follow up on her comment at the April hearing that she would ensure that Gewin had counsel. She did not inform Gewin on the record whether he had a right to counsel and, if so, that waiving it carried serious risks. She did not record any knowing and intelligent waiver. Instead, communications between the court and Gewin about any right to counsel occurred at later conferences or hearings, were not fully explicit, and spread over years, making it hard to determine what Gewin knew and what he intended regarding his right to counsel. Gewin remained in prison for contempt for six years.

It was not until 2011 that the district judge summoned the Federal Public Defender to meet and confer privately with Gewin and offer his assistance. The Defender offered to

represent Gewin, and he proposed filing a motion to purge the contempt. Gewin declined the Defender's offer of free and expert legal representation.

In 2013, during the pendency of this appeal, the government acknowledged that the contempt order had lost any coercive force and so should end. Gewin has thus only recently begun to serve his sentence of incarceration—a sentence that, but for the contempt, would now be complete.[2]

The district judge assumed without deciding that due process required her to appoint counsel—or to determine on the record that Gewin waived any such right—before she held him in contempt. We, too, dispose of the appeal without deciding that issue. *Cf.* Appellee Br. at 33 (the government

---

[2] Gewin contended, for the first time at oral argument on appeal, that his right to retained counsel was also violated because, when he appeared at the September 2007 contempt hearing without counsel, the court failed to provide him with a reasonable amount of time to hire his own lawyer. Oral Arg. Tr. at 13:19-24. Gewin correctly notes that the Due Process Clause is not only relevant to the question whether an indigent defendant is entitled to appointed counsel, but also ensures that a non-indigent civil contemnor has the right to retain an attorney to represent him during contempt proceedings. *See generally Gray v. New Eng. Tel. & Tel. Co.*, 792 F.2d 251, 257 (1st Cir. 1986) ("[A] civil litigant does have a constitutional right, deriving from due process, to retain hired counsel in a civil case."); *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1117-18 (5th Cir. 1980) (same); *cf. Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) (a recipient of welfare benefits must be allowed to retain an attorney to represent him during a hearing to terminate those benefits, if he so desires). Gewin, who is represented by counsel on appeal, forfeited that argument, however, by failing to discuss it in his briefing and not raising it until oral argument. *See Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003).

assumes that, "[h]ad Gewin sought court-appointed counsel" in October 2007, when he wrote to the court that he had "no funds, or so-called 'money' in any accounts," appointed counsel "would no doubt have been supplied"). Those assumptions that a right to counsel may have attached in these circumstances are at least reasonable.

Potential civil contemnors facing incarceration have a due process right to appointed counsel, subject to the Supreme Court's analysis in *Turner*. *See generally Walker v. McLain*, 768 F.2d 1181, 1185 (10th Cir. 1985) (collecting pre-*Turner* cases holding that a civil contemnor had a due process right to counsel). Before *Turner*, the Court had recognized in certain contexts "the presumption that an indigent litigant has a right to appointed counsel," limited to cases in which the litigant "may be deprived of his physical liberty." 131 S. Ct. at 2516 (internal quotation marks omitted). *Turner* found that presumption rebutted in the context of a state civil contempt proceeding for failure to pay child support. *Id.* at 2520. In doing so, the Court identified an exception to, but did not generally eliminate, the due process right to counsel. *See id.* (holding that Turner's due process rights were violated because he received "neither counsel nor the benefit of alternative procedures"). *Turner* reaffirmed that, when determining whether due process requires appointment of counsel, a court must consider the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Turner*, 131 S. Ct. at 2517-18. Those factors include (1) the nature of the private interest affected, (2) the risk of an erroneous deprivation of that interest without appointed counsel, and (3) the nature and magnitude of any countervailing interests. *Id.*

The *Mathews* factors suggest why it was reasonable to assume that Gewin had a due process right to appointed counsel:

First, as in *Turner*, the "private interest that [was] affected" in Gewin's contempt proceeding—the "loss of personal liberty through imprisonment"—"argues strongly for the right to counsel." *See id.* at 2518 (internal quotation marks omitted). But, unlike Turner, who was facing a maximum term of imprisonment of up to a year, no statute limited the period Gewin could be held, and he ended up serving six years—an extraordinary period of civil contempt.

Second, "[g]iven the importance of the interest at stake, it is obviously important to assure accurate decisionmaking" with respect to Gewin's ability to pay the restitution and fine, *see id.*, and counsel most likely would have improved the accuracy of decisionmaking here. Here, as in *Turner*, it was important to make an accurate determination of "the key 'ability to pay' question" that supports continued confinement for civil contempt. *Id.*

Third, the three subsidiary considerations that argued against requiring the state to provide counsel in Turner's civil contempt proceeding point in the other direction here. Unlike in *Turner*, the question at issue in Gewin's contempt proceeding was not "straightforward." *Compare id.* at 2519. As our opinion observes, Gewin was caught in a Catch-22. Slip Op. at 17 n.2. Gewin very well may have spent the funds identified in the court's sentencing order. If so, he could have come forward with that evidence to defend against civil contempt, but in doing so he would have exposed himself to criminal contempt or prosecution on another ground for dissipating funds in violation of the court's order. *Id.* Alternatively, if he avoided criminal jeopardy by declining to present that evidence to the court, he would remain in contempt, with no apparent end to his incarceration. The hazards surrounding those choices underscore that Gewin's circumstances presented legal issues far more complex than

those characterized in *Turner* as simple enough that an indigent could navigate them effectively on his own, aided only by a system of simple forms and follow-up questioning. *See Turner*, 131 S. Ct. at 2519; *see also United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618, 619-20 (2d Cir. 1983) ("To guide a client between the Scylla of contempt and the Charybdis of waiving his Fifth Amendment privilege requires not only a lawyer but an astute one.").

This case is also unlike *Turner* insofar as appointment of counsel to Turner, who had refused in that case to pay child support, would have unfairly and disproportionately empowered him against the child's mother, the unrepresented custodial parent. The Court concluded that "[t]he needs of such families play an important role in our analysis"; appointing counsel to Turner would create an "asymmetry of representation" that could make the proceedings "*less* fair overall." *Turner*, 131 S.Ct. at 2519. In this case, in contrast, the only party opposing Gewin in the civil contempt proceeding was the United States government, and providing him counsel would have helped to level the playing field. Finally, unlike in *Turner*, there is no contention here that counsel was unnecessary because of any substitute procedural safeguards that might be used instead of counsel to reduce the risk of an erroneous deprivation of liberty. *Compare id.* at 2520.

Given Gewin's apparent entitlement to appointed counsel, our inquiry focuses on whether Gewin waived that right. The majority's opinion does an admirable job of sifting through the record to ascertain that Gewin did in fact waive his right to counsel. But had the trial judge followed best practices in the first instance, our confirmation of Gewin's waiver would have been vastly simplified. Indeed, here, the district court appears to have recognized what needed to be

done, yet for whatever reason did not go through those formal steps. In the absence of an adequate colloquy on the record reflecting knowing and intelligent waiver, the kind of whole-record review that we conducted here will continue to be necessary. Such review is not ideal, however, and can readily be avoided.

Rather, the best practice is for the district court to hold a formal colloquy on the record—similar to the standard colloquy that is required in criminal cases—in order to inform an indigent litigant of the right to counsel, if any, and inquire whether the litigant wants the court to appoint counsel.

On-the-record colloquy for assignment or waiver of counsel is the standard operating procedure in criminal trials. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). In the context of the Sixth Amendment right to counsel in criminal cases, the Supreme Court explained that "[i]t is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings." *Von Moltke v. Gillies*, 332 U.S. 708, 722 (1948). Also in the context of the Sixth Amendment right, our court has emphasized the practical benefit of timely and explicit on-the-record inquiry: "The most certain assurance" that the defendant is aware of the dangers and disadvantages of self-representation "is by a colloquy on the record between judge and defendant." *United States v. Bailey*, 675 F.2d 1292, 1300 (D.C. Cir. 1982). "It is precisely because of the ambiguities that commonly accompany purported waivers of counsel" that courts in criminal cases "have generally required a 'recorded colloquy' between the defendant and the court, one in which the accused is informed of his right to an attorney, his right to

self-representation, and the decided advantages of competent legal representation." *United States v. Tompkins*, 623 F.2d 824, 828 (2d Cir. 1980); *see also Bailey*, 675 F.2d at 1299-1300.

The differences between criminal and civil proceedings, and the distinct constitutional grounds for the right to counsel in civil and criminal cases, do not change the fact that a litigant's knowing and intelligent waiver requires notice of the right. *See In re Gault*, 387 U.S. 1, 41 (1967); *Walker*, 768 F.2d at 1185. And the practical benefits of an on-the-record colloquy are not limited to the criminal setting.

The 2013 Benchbook for U.S. District Court Judges accordingly recognizes that, although the bases of the right to counsel in the criminal and civil context differ, where a right exists, effective process for protecting it is quite analogous. The Benchbook sets forth model "civil contempt procedures" for judges to follow with uncounseled litigants. If the potential contemnor "desires an attorney but cannot afford one, [the court] must appoint counsel for him . . . unless waived." Fed. Judicial Ctr., Benchbook for U.S. District Court Judges § 7.02, at 236 (6th ed. 2013). The process the Benchbook recommends, by explicit cross-reference, is the same as the process where right to counsel attaches in the criminal context: If a defendant does not have an attorney, the court should inform the defendant of his "constitutional right," if any, "to be represented by an attorney at every stage of the proceedings" and tell him that if he "is unable to afford an attorney, the court will appoint one without cost to him." *Id.* § 1.02, at 5 (citing 18 U.S.C. § 3006A).[3] The Benchbook

---

[3] Section 3006A is primarily concerned with providing appointed counsel to defendants facing criminal charges, but it is not confined to criminal defendants. *See, e.g.*, 18 U.S.C. § 3006A(a)(1)(G) (material witnesses). The statute states that representation shall be

instructs that, after providing the defendant with that information, the court should ask the defendant if he or she understands the right to an attorney, wishes and is able to obtain counsel, or wants the court to appoint counsel. *Id.* § 1.02, at 6. If the defendant does not want counsel, the court "must make clear on the record that the defendant is fully aware of the hazards and disadvantages of self-representation." *Id.*

Any additional burden on a court that conducts a colloquy on the record "is more than offset by avoidance of lengthy appeals to determine whether the defendant's [due process right] has been violated." *See United States v. Gordon*, 829 F.2d 119, 125 (D.C. Cir. 1987). Because a reviewing court will have the most certain assurances that a defendant knowingly and intelligently waived his right to counsel when that waiver is made on the record, after an adequate colloquy between the judge and contemnor, district courts are well advised to make such a record. Indeed, "a brief intercession on the record of this kind" would have effectively eliminated this appeal. *Bailey*, 675 F.2d at 1300. Had the district court conducted a standard colloquy on the right to counsel before holding Gewin in contempt and had he then clearly waived the right on the record, it seems virtually certain this appeal could have been dismissed as frivolous.

---

provided to any financially eligible individual when the individual "faces loss of liberty in a case, and Federal law requires the appointment of counsel." *Id.* § 3006A(a)(1)(I). Civil contemnors face loss of liberty, and, as noted above, the Due Process Clause in some circumstances requires appointment of counsel.

11

\* \* \*

A contempt proceeding by its nature deals with conflict between an individual and a court. Gewin was a challenging litigant. He promised to pay and then sent in a fake check; at a later court appearance he "charged" the court $500,000 each time the judge uttered his name, which he claimed offset his debt to the court; he failed to timely appeal the order holding him in contempt, concentrating instead on filing repeated, unsuccessful habeas petitions directed at his criminal sentence. It is often unclear on the cold record what Gewin's intentions were: He seemed at once grandiose and furtive, manipulative and delusional, fraudulent and confused. But it is perfectly clear that Gewin's uncooperative conduct made proceedings difficult for the district court. Things would have been easier on the court, and Gewin's rights and interests would have been better served, had he been represented by counsel.

People who should be represented nevertheless routinely refuse counsel. Many suffer dire consequences. That is their prerogative, as it was Gewin's in this case. But it is the courts' obligation to present such grave choices as clearly as possible. This record leaves nagging doubts whether any right to counsel Gewin may have had was promptly honored. There are few substitutes for routine use of pre-contempt colloquies to protect litigants' rights and autonomy and to enable just and efficient judicial review.